IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

WILLIAM WHITTMAN

  Plaintiff,

v.

PENSKE AUTOMOTIVE GROUP,
INC., *et al.,*

  Defendants.

\* 

\*  Case No. 1:21-cv-03156

\*

\*

\*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>MEMORANDUM OPINION</u>

Self-represented Plaintiff William Whittman filed an "Amended Complaint As a Matter of Course" at ECF 27 against Defendants Penske Automotive Group, Inc., PAG Chantilly M1 LLC, Bert O'Neal, The Mercedes Benz Financial Services USA LLC, United Auto Care, Inc., Toyota Motor Insurance Company, Toyota Insurance Management Solutions USA, LLC, and Toyota Motor Insurance Services, Inc. The court has before it a Motion to Dismiss filed by Mercedes-Benz Financial Services USA LLC ("MBFS") at ECF 30 and a Motion to Dismiss filed by Toyota Motor Insurance Company, Toyota Insurance Management Solutions USA, LLC, Toyota Motor Insurance Services, Inc., and Toyota Financial Services Corporation ("Toyota Defendants") at ECF 28.

### I.  **Introduction**

Preliminarily, the court notes that while Plaintiff originally included Toyota Financial Services Corporation as a named defendant in the Complaint, Plaintiff has elected not to proceed against this party in his Amended Complaint.[1] Further Defendants Penske Automotive Group,

---

[1] The original Complaint included as defendants Toyota Financial Services Corporation and Mercedes-Benz of Chantilly (among others); neither of these entities is a defendant in the Amended Complaint. As such, the court

Inc., PAG Chantilly M1 LLC, and Bert O'Neal were dismissed from this action by Order at ECF 33. Defendant United Auto Care, Inc., as best the court can discern from the record, has never been served with process. The court will proceed to address the merits of the pending motions to dismiss at ECF 28 and ECF 30. The motion at ECF 28 shall be referred to as the "Toyota Motion"; the motion at ECF 30 shall be referred to as the "MBFS Motion"; together, they shall be referred to as the "Motions."

Plaintiff's Amended Complaint arises out of denial of insurance coverage under a Guaranteed Auto Protection ("GAP") policy. The Amended Complaint asserts claims of civil conspiracy (Count 1), fraud (Count 2), and bad faith (Count 3).[2] Plaintiff's pleading spans 136 paragraphs and covers more than 30 pages. While the heart of Plaintiff's complaint appears to be that he was wrongfully denied GAP coverage, which caused him to suffer harm, the legal underpinnings and particularized allegations with respect to each of the many defendants he has sued are effectively impossible to tease out and are at times indistinguishable from a general, if not understandable, complaint regarding the challenges of navigating a morass of insurance coverage complexities – all of which is imbued with Plaintiff's certainty that he was mistreated from the start.

Before turning to the sufficiency of the Amended Complaint and the merits of the Motions, the court notes that complaints filed by *pro se* litigants are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Pro se* litigants, however, must still comply with court rules and basic requirements of pleading. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Forquer v. Schlee*, 2012 WL 6087491 (D. Md. Dec. 4, 2012); *Osei v. Univ. of Maryland*, 202

---

construes Plaintiff's claims against these entities as abandoned and effectively voluntarily dismissed. Therefore this action is not pending against those entities and they have been terminated as parties. ECF 1; ECF 27.
[2] Counts 4 and 5 were brought solely against Defendants previously dismissed from this action by order at ECF 33. Therefore, Counts 4 and 5 are no longer pending and shall not be addressed herein.

F.Supp. 3d 471 (D. Md. 2016).  Further, notwithstanding the liberal construction of pleadings and papers filed by self-represented persons, "[the court's] task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Importantly,"[t]he court may not rewrite the complaint to include claims that were never presented [or to] develop the plaintiff's legal theories for him." *Carmichael v. Western Reg. Jail,* 2020 WL 930274, at *2 (S.D.W. Va. Feb. 4, 2020) (internal citations omitted).

## II.     Background

For purposes of the Motions, the court accepts as true all well-pleaded factual allegations set forth in Plaintiff's Amended Complaint.  To summarize, on June 14, 2019, Plaintiff purchased a Mercedes-Benz C-Class automobile from PAG Chantilly M1 LLC d/b/a Mercedes-Benz of Chantilly, a Mercedes-Benz dealership located in the Commonwealth of Virginia, pursuant to a retail installment sale contract.  Plaintiff also purchased a GAP insurance policy in connection with the car purchase, the purpose of which is to cover the unpaid balance owed on a finance or lease contract in the event the insured vehicle is declared a total loss as a result of a theft or accident. Plaintiff financed his purchase of the GAP insurance through the retail installment sales contract, which subsequently was assigned to MBFS, the financier.  Plaintiff alleges that when he purchased the GAP policy, the "loan officer" presented Plaintiff with the policy identifying United Auto Care as the insurer.

Some months later,  Plaintiff's son crashed the car, which resulted in a total loss of the vehicle.  Plaintiff filed a claim for coverage with his primary insurance carrier, which provided coverage of $24,289.29, leaving $6,568.58 outstanding under the retail installment sales contract. Plaintiff, therefore, submitted a claim for GAP coverage in January 2020, at which time he alleges it became known to him that United Auto Care is a "Fake, Sham Company" and that the telephone

number to contact the GAP insurer was in fact the telephone number of "another fake, fraudulent, and sham company that goes by the name of Toyota Financial Services" – and, in fact, Toyota Financial Services is not the GAP insurer.

In April 2020, Plaintiff received a letter from Toyota Financial Services advising that the insurer had "not received the documentation required by the terms of your GAP agreement to process your claim."  The letter put Plaintiff on notice that "[i]f the requested documentation is not received within 30 days from the date of this letter, the claim file will be closed."  Plaintiff alleges that in June 2020, he contacted Toyota Financial Services because he learned that the balance on the contract remained outstanding to MBFS; he later conveyed to Toyota Financial Services the "payoff quote" he obtained from MBFS.

After that, Plaintiff alleges a fruitless and frustrating ordeal of attempting to get coverage of the payoff amount through the GAP policy.  Plaintiff generally alleges that he was given the runaround and that Defendants conspired to defraud him, acted in bad faith, and sold him a GAP policy with no actual insurer.  On December 6, 2021, Plaintiff was advised that his GAP claim was denied.[3]  Plaintiff then instituted this action.

The Amended Complaint asserts claims of civil conspiracy to commit fraud (Count 1), fraud (Count 2), and bad faith (Count 3).[4]  Plaintiff seeks $680,000 in actual and consequential damages as well as punitive damages of $350,000 against each named Defendant.

---

[3] Plaintiff alleges that he was told his claim would be approved pending receipt of the payoff amount of his car, and that his claim was denied because his son was intoxicated at the time he unlawfully "stole" and crashed the car. Ultimately, as best the court is able to discern, the claim appears to have been denied for failure to submit documents required to process his claim.  Whichever is the case it is immaterial to the disposition of the Motions.
[4] *See* note 2, *supra*.

### III.     Choice of Law

When exercising diversity jurisdiction, as the court is here, federal courts apply the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941); *DiFederico v. Marriott Int'l, Inc*., 714 F.3d 796 (4th Cir. 2013).  Maryland adheres to the *lex loci delicti* doctrine.  Under that doctrine, "where the events giving rise to a tort action occur in more than one State, [courts] apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of Am. v. Hood,* 395 Md. 608, 615 (2006).  "The place of injury is the place where the injury was suffered, not where the wrongful act took place." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503 (4th Cir. 1986).

Plaintiff alleges that Defendants' alleged wrong-doing caused him to suffer harm in Maryland.  Specifically, Plaintiff presently resides in Maryland, and resided in Maryland during the ordeal he describes in his pleading, including at the time he was denied GAP coverage. Plaintiff alleges he was evicted from his Maryland home as a result of Defendants' alleged wrong-doing; was unable to support his family in Maryland as a Maryland real estate agent as a result of Defendants' alleged wrong-doing; suffered financial harm in connection with a Maryland property as a result of Defendants' alleged wrong-doing; and sustained damage to his credit (while residing in Maryland) as a result of the complained-of actions.

Although Plaintiff's opposition and sur-reply (ECF 34 and 41) to the Toyota Motion takes great issue with the choice of law argument the Toyota Defendants raise, Plaintiff's quarrel appears to be with the law that requires application of choice of law principles of the jurisdiction of the presiding trial court; and he urges generally that the *Erie* doctrine requires application of Virginia law.  Plaintiff concedes that a) Maryland adheres to the *lex loci delicti* doctrine; b) that his alleged

harms were suffered in Maryland.  Therefore, the court will assess the sufficiency of Plaintiff's claims under the laws of the State of Maryland.

### IV.      Federal Rule 12(b)(6)

A party moving to dismiss pursuant to Rule 12(b)(6) asserts that a plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint.  It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

## V.     Analysis

### A.     Count 1 - Civil Conspiracy to Commit Fraud

As well set forth by the Fourth Circuit in *Marshall v. James B. Nutter & Co.,* 758 F.3d 537,

541 (4th Cir. 2014):

> Under Maryland law, civil conspiracy is defined as the "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper,* 385 Md. 1, 867 A.2d 276, 290 (2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n,* 259 Md. 206, 269 A.2d 815, 824 (1970)) (internal quotation marks omitted). In addition to proving an agreement, "the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* The agreement itself is not actionable under Maryland law "but rather is in the nature of an aggravating factor" with respect to the underlying tortious conduct. *Id.* Indeed, the Maryland Court of Appeals has consistently maintained that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 340 Md. 176, 665 A.2d 1038, 1045 (1995) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.,* 336 Md. 635, 650 A.2d 260, 265 n. 8 (1994)) (internal quotation marks omitted). As the *Alleco* court explained: There is no doubt of the right of a plaintiff to maintain an action on the case against several, for conspiring to do, *and actually doing,* some unlawful act to his damage.... It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action. *Id.* (quoting *Kimball v. Harman,* 34 Md. 407, 409–11 (1871)) (internal quotation marks and citation omitted); *see also id.* ("'No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort'") (quoting *Domchick v. Greenbelt Consumer Servs., Inc.,* 200 Md. 36, 87 A.2d 831, 834 (1952)). Thus, civil conspiracy requires an agreement, and an overt act in furtherance of the agreed—to unlawful conduct that causes injury, as well as the legal capacity of the conspirators to complete the unlawful conduct.

Plaintiff generally alleges that Defendants "acting in concert and in conspiracy which other

had inserted other fraudulent falsities in this Sales Contract, stating that United Auto Care contact

number is (800) 255-8713 a number that has never belonged to United . . . ." (Amended Complaint

at ¶35).  Plaintiff further alleges that Defendants conspired to "delay" his ability to make a GAP

7

claim so that it would be too late to make a claim by the time he figured out the true provider. (*Id.* ¶41.) Count 1 at paragraph 95(2), asserts that the unlawful act undertaken by the alleged conspirators was "the tort of Bad Faith in behalf of their principal whose product they offered for sale and sold to plaintiff." Importantly, Plaintiff does not challenge that he in fact purchased a valid GAP insurance policy; to the contrary, the Amended Complaint alleges at length his communications with Defendants with the goal of learning the identity of the "real Gap Provider" (*see, e.g.,* Amended Complaint at ¶¶41-44) so that he could submit his claim. He thereafter describes his claim submission, his assignment of a claim number, and ultimately denial of his coverage claim.

The court construes the Amended Complaint broadly to assert that Defendants conspired to sell GAP plans to car buyers knowing that the insurance claims process is oppressively challenging and/or that claims may be delayed and perhaps not covered. Even assuming that such a "scheme" plausibly alleges an illegal act (or a lawful act engaged in by unlawful means), the Amended Complaint does not rise above a general, conclusory assertion that Defendants acted "in concert and in conspiracy." The Amended Complaint does not allege how each Defendant participated or conducted itself in furtherance of the generalized scheme; instead Plaintiff rests his conspiracy claim on broad strokes that color Defendants as a monolith.

Contributing confusion to the pleading, Plaintiff also generally alleges that the "Dealership Defendants and the Financing Defendants" conspired against him (*see, e.g.,* Amended Complaint at ¶32) but later identifies "MBFS and the Dealership Defendants" as the conspirators (*id.* ¶ 95). Plaintiff does not define "Dealership Defendants" or "Financing Defendants." Further, by order at ECF 33, the car dealership (PAG Chantilly M1 LLC d/b/a/ Mercedes-Benz of Chantilly) was dismissed from the case and the Amended Complaint does not identify Toyota Financial Services

as a defendant.   "Lengthy pleadings offering confusing factual narratives and conclusory statements of law place an unjustified burden on the court and any party who must respond.... A court therefore may, in its discretion, dismiss a complaint if it is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.' " *Howes v. SN Servicing Corp.,* CCB-20-670, 2021 WL 878354, at *2 (D. Md. Mar. 9, 2021).

For these reasons, the Motions will be granted as to Count 1.

### B.      Count 2 – Fraud

To state a claim for fraud under Maryland law, a plaintiff must plead: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.   Further Federal Rule of Civil Procedure 9 requires that a plaintiff "state with particularity the circumstances constituting fraud."   FED. R. CIV. P. 9(b).

Plaintiff complains that United Auto Care was not the true insurer of the GAP policy and that Defendants knew it and lied about the identity of the true insurance provider to "mislead plaintiff … [and] to deceive and defraud him."   (Amended Complaint at ¶¶103-104.)   As set forth above, Plaintiff does not allege that he was sold a fake policy or that he was not a GAP insured; rather, he complains that the "real Gap Provider" was not United Auto Care.   Plaintiff does not allege that the identity of the GAP insurer (as United Auto Care or any other outfit) was material to his decision to purchase GAP coverage; nor does Plaintiff allege that he suffered harm because

another entity was the provider.  Instead, Plaintiff alleges that he suffered harm because the claim was denied.

For these reasons, the Motions will be granted as to Count 2.

### C.     Count 3 - Bad Faith

Plaintiff's pleadings and motions papers make it challenging for the court to determine whether Plaintiff is suing Defendants for bad faith denial of an insurance claim or for generally engaging in their respective business practices in a bad faith manner, or both.  Therefore, the court addresses both issues.

Maryland law does not support the tort of bad faith against an insurance provider. *See, e.g., Cecilia Schwaber Trust Two v. Hartford Acc. & Indem. Co.,* 636 F. Supp.2d 481, 486 (D. Md. 2009); *Allstate Indem. Co. v. Parsons,* JKB-09- 3411, 2010 WL 2163869, at *1 (D. Md., May 26, 2010) (Bredar, C.J., presiding) (holding that "'[b]ad faith' denial of an insurance claim is not a basis for a tort claim in Maryland by a first-party claimant against an insurer."); *MingLewis v. Std. Fire Ins. Co.,* No. CCB-05-1412, 2005 WL 1923155, at * 2 (D. Md. Aug. 10, 2005) (holding that "there is no tort action for the bad faith failure of an insurer to pay a first party claim.").

To the extent Plaintiff generally charges Defendants with bad faith business practices, "the courts do not recognize any 'free floating' 'bad faith'; it must be tethered to a violation of a contractual provision or a statute or constitute a tort." *Paccar, Inc. v. Elliot Wilson Capital Trucks, LLC* 905 F. Supp.2d 675, 684 n.8 (D. Md. 2012).

For these reasons, the Motions will be granted as to Count 3.

## VI.     Conclusion

For the reasons set forth above, by separate order, the Motions will be granted.

/S/

_____

Julie R. Rubin
United States District Judge

December 16, 2022